Gilmore, J.
The acts of the legislature affecting the principal question to be determined in this case, are: First, The act of March 7,1835, entitled “ an act to amend the act entitled ‘ an act for the more effectual punishment of certain offenses within the county of Hamilton.’ ” (S. & C. 444.) The first section of this act defines the offense of petit larceny, and when committed in Hamilton county, punishes the same by a fine not exceeding two hundred dollars, or “ imprisonment not exceeding six months in the county jail at hard labor under the direction of the county commissioners.” By subsequent legislation the work-house is substituted for the county jail as the place of confinement.
Second. The act of March 9, 1835, entitled “ an act to amend the act entitled ‘ an act for the punishment of offenses therein named,’ passed March 8, 1831.” (S. & O. 439.) This is a general law and defines petit larceny in the same language as the first-named act, and punishes *429 the offense with a fine in the same amount, or “ imprisonment for thirty days in the dungeon of the county jail to be fed on bread and water.”
Third. The act of May 7, 1869, entitled “an act to amend an act passed March 9, 1835, entitled an act for the punishment of certain offenses therein named, passed March 8,1831.” (66 Ohio L. 341.) This act defines petit larceny in the same language as the other acts above named, and punishes the offense by the same fine, or “imprisonment in the county jail not exceeding thirty days; and the court may, in its discretion, upon suggestion of the prosecuting attorney, order that any person convicted under the provisions of this act, shall, during his term of sentence, be required to perform hard labor under such regulations as the county commissioners may prescribe.” This act in terms repeals the general law of March 9, 1835.
The plaintiff in error was convicted in the police court of Cincinnati, and under the first section of the special act of March 7, 1835, sentenced to imprisonment in the workhouse for six months. After suffering confinement under the sentence for more than thirty days, he paid the costs of prosecution, and applied to the Probate Court of Hamilton county for a writ of habeas corpus, which was allowed. On final hearing the writ was dismissed, and the plaintiff in error remanded to the custody of the superintendent of the work-house. The court of Common Pleas, on error, affirmed the judgment and order of the Probate Court.
To reverse the judgment of the Common Pleas this proceeding in error is prosecuted.
The plaintiff in error claims: 1. That the act of May 7, 1869, repealed the first section of the special act of March 7, 1835, under which he was convicted and sentenced; and 2. That the conviction and sentence are therefore void, and that he is entitled to his discharge on habeas corpus.
In order to get at the exact question first presented, it is necessary to refer to the case of Allbeyer v. The State, 10 Ohio St. 588. In that case the plaintiff’ in error had been convicted and sentenced on a charge of petit larceny, under *430 the special act of March. 7, 1835, and it was claimed that this act had been abrogated by section 26, article 2 of the constitution of 1851. This section provides that, “ All laws of a general nature shall have a uniform operation throughout the state; nor shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except as otherwise provided in this constitution.” It was held that this section had, at the adoption of the constitution, only a prospective, and not a retroactive effect on legislation ; and that the special act, being in force oh the first day of September, 1851, and not inconsistent with the new constitution, was within the provisions of section one of the schedule of the constitution, and therefore not abrogated by the section above quoted.
Although not expressly it is impliedly held that the two acts of 1835, above named, co-existed after the taking effect of the present constitution ; for the reason that neither of them were inconsistent with it, and that section 26, article 2, applied only to future legislation.
The question before us is : Hid the act of May 7, 1869, which expressly repealed the act of March 9,1835, also, by implication, repeal the special act of March 7,1835 ?
Repeals by implication are not favored, and in the case of two statutes, passed by virtue of the same constitutional authority, one will not be construed to repeal the other by implication, unless they are wholly irreconcilable by any fair mode of interpretation. But if the constitution — the supreme law of the state — has been changed between the passage of the first and second of the supposed statutes, then another element may enter into their construction or interpretation — that is, the provisions of the intervening constitution; and these must be looked to, in order to ascertain the force and effect of the subsequent statute, and if it has, in any respect, derived peculiar force from the constitutional provisions that entered into and became part of it, whereby its force and effect may have been aug *431 mented, so much the more potent may it be in determining whether the former statute was impliedly repealed by it.
The question here is not whether these two statutes can, by the usual rules of interpretation, be made to stand together, but whether the former was not necessarily displaced and abrogated by the latter, when considered in connection with the first clause of section 26, article 2, of the present constitution. This clause provides that acts of a general nature must have a uniform operation throughout the state. Is the act 1869 of such a nature ? It seems to me, that whether we consider the subject matter to which it relates, or the limitation it imposes on the liberty of the offender by way of prescribed punishment, the answer must be in the affirmative. It is the subject-matter upon which it operates, and not the absence of words of limitation, that determines the character of the law in this respect.
Crime, by whatever name it may be called, or however it may be defined by an act of the general assembly, will be of the same nature in every part of the state. An act without words of limitation, defining and punishing a designated crime or misdemeanor, would necessarily be a law of a general nature, applicable to the designated crime or offense, wherever within the state it may have been committed.
The general assembly would have no power to make murder, as defined in the first section of our crimes act, punishable with death in one county, and imprisonment for life in another; for the crime being of the same nature everywhere, the law defining and punishing it would necessarily be of a general nature, and therefore within the operation of the first clause of section 26, article 2.
The same must also be the case in reference to acts of the general assembly, defining and punishing larceny or any other crime or offense. If one county could be excepted from the operation of such a law, then two, or any other number of counties, might be, and the right to exempt would imply the power to pass a special law, differing from all others, for each county in the state. In Cass v. Dillon, *432 2 Ohio St. 617, speaking of section 26, article 2, the court said: “ The origin of this section is perfectly known. The legislature had often made it a crime to do in one county, or even township, what it was perfectly lawful to do elsewhere, and had provided that acts, even for the punishment of offenses, should be in force or hot, in certain localities, as the electors thereof respectively might decide. It was to remedy this evil and to prevent its recurrence that this section was framed.” "We concur in the views here expressed, and are therefore of opinion that the first section of the special act of March 7, 1835, is in irreconcilable conflict with, and by implication repealed by, the act of May 7, 1869, which, by virtue of the first clause of section 26, article 2, of the constitution, has a uniform operation throughout the state, and therefore displaced and supplanted it in Hamilton county.
The second question presented is: Was the conviction and sentence of the relator by the police court absolutely null and void ?
It is to be observed, that although the first section of the Hamilton county act, under which the court assumed to proceed in convicting and sentencing the relator, was not in force at the time, yet the general act of May 7, 1869, was in force. Both laws defined the offense of petit larceny in the same language, and the proceedings of a court having jurisdiction of this subject-matter, will be referred to the law in force, and held to be valid to the extent it conferred jurisdiction, although the court assumed to act under the law not in force. The punishment inflicted by the sentence, in excess of that prescribed by the law in force, was erroneous and voidable, but not absolutely void. It follows' that a writ of error to reverse the proceedings or sentence is the remedy that the relator should have resoi’ted to in order to obtain a discharge from illegal imprisonment, and not habeas corpus, which is not the proper mode of redress where the relator was convicted of a criminal offense and erroneously sentenced to excessive imprisonment therefor by a court of competent jurisdiction. Ex parte Stephen *433 M. Shaw, 7 Ohio St. 81, approved and followed on this point.
On this ground the judgment of the Court of Common Pleas is affirmed.
McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.